OPINION. Baum, Judge: The question for decision is whether the full amount paid to petitioner as compensation for services rendered constituted gross income to him in the year of receipt, despite an obligation on his part to pay over to another a portion of such amount where he in fact did not pay over such portion. Petitioner concedes that where a taxpayer has rendered services and receives money as compensation therefor under a claim of right and without restriction as to use or disposition, such amounts constitute gross income to him, notwithstanding that he may subsequently have to return the amount received or its equivalent. Cf. Healy v. Commissioner, 345 U. S. 278; United States v. Lewis, 340 U. S. 590; North American Oil Consolidated v. Burnet, 286 U. S. 417; Haberkorn v. United States, 173 F. 2d 587 (C. A. 6). Petitioner contends, however, that of the sum of $122,333.33 received by him from M. G. M. in 1948, $38,034.49 “was not received by him in 1948 under any claim of right, but, rather, that it was received by him with full and complete restrictions against any use by him and was received by him as agent or trustee for Gainsborough.” He bases this contention on the Agency Agreement, whereby he agreed to turn over to Gainsborough his receipts from M. G. M. less the items more fully set forth in the findings. Petitioner interprets this agreement as preventing him from receiving the full sum paid by M. G. M. under a claim of right as his own salary, and causing him instead to receive such sum as a mere agent or trustee for Gainsborough, the true recipient. He thus insists that the amount includible in his gross income should be limited to that amount which, under the Agency Agreement, he was entitled to retain; the excess was received and held by him in a mere representative capacity, and not under any claim of right or with any freedom to dispose of it. With this contention we cannot agree. It has long been recognized that a taxpayer must report as his income amounts received as compensation for personal services, and even an irrevocable assignment of all or a part of such compensation cannot relieve him of that duty, regardless of whether the compensation is paid to him or to the assignee. Lucas v. Earl, 281 U. S. 111; Helvering v. Eubank, 311 U. S. 122. Cf. Helvering v. Horst, 311 U. S. 112; Harrison v. Schaffner, 312 U. S. 579. While one receiving money or property as a mere agent or trustee and not as his own compensation may not be taxable thereon (cf. Broadcast Measurement Bureau, Inc., 16 T. C. 988; Seven-Up Co., 14 T. C. 965; but cf. Krim-Ko Corporation, 16 T. C. 31), the record in the instant case establishes that petitioner and not Gainsborough was the true payee. Petitioner was employed by M. G. M. to perform highly specialized personal services. A relationship was created which petitioner clearly could not assign to Gainsborough. He alone performed the specified services, and he alone had the right to demand and receive the sum of $122,333.33 as compensation from M. G. M. Gainsborough was not a party to either of the M. G. M. agreements, nor did either of the parties to those agreements undertake therein to pay anything to Gainsborough or to recognize it as having any interest or rights in the contracts or in any sum payable thereunder. Cf. Daugherty v. Commissioner, 63 F. 2d 77 (C. A. 9). Indeed, in the negotiations leading to M. G. M.’s employment of petitioner, M. G. M. was unwilling to enter into a “loan out” arrangement with Gainsborough; it dealt directly with petitioner through his American agent. The fact that petitioner entered into a direct contract with M. G. M. in violation of the Box Agreement is irrelevant. The pivotal consideration is that he actually did render services to M. G. M. for which he was paid. To the extent that he may have been accountable in damages to Gainsborough for violation of the Box Agreement, he may have been entitled to deductions when and if he might pay over such amounts to Gainsborough. But meanwhile any compensation received by him from M. G. M. was his own and must be charged to him for tax purposes. The so-called Agency Agreement with Gainsborough was not executed until August 12,1948, some 5 months after petitioner commenced his employment for M. G. M. In effect that agreement spelled out petitioner’s liability to Gainsborough by reason of' his contract with M. G. M. It did not make Gainsborough a party to the M. G. M. contract. It did not in fact constitute petitioner an agent, and it did not result in the establishment of a trust. It merely set forth a contractual liability from petitioner to Gainsborough. If petitioner had in fact paid over a portion of his compensation to Gainsborough, then he probably would have been entitled to a deduction therefor, and would thus be burdened taxwise only with the net amount retained. The situation in this respect would be different from that in the Lucas v. Earl line of cases where the payment to the assignee was of a personal character and nondeductible by the assignor. But in the present case, petitioner did not pay the amount in question to Gainsborough during the tax year or at any other time. Being on the cash basis, he obviously could not claim such deduction, and therefore seeks to achieve the same result by contending that the compensation actually paid to him and retained by him for services rendered by him did not constitute gross income. We think the contention is unsound. The cases relied upon by petitioner (Seven-Up Co., 14 T. C. 965; Broadcast Measurement Bureau, Inc., 16 T. C. 988; E. P. Madigan, 43 B. T. A. 549; Sara R. Preston, 35 B. T. A. 312; Stoner v. Commissioner, 79 F. 2d 75 (C. A. 3), certiorari denied 296 U. S. 650) are all distinguishable. In some of them a trust was thought to exist by reason of the special facts presented, and in others it was thought that the taxpayer had not received or did not have the right to receive the amounts in question during the tax year involved. The instant case is more nearly comparable to New Oakmont Corp. v. United States, 86 F. Supp. 897 (Ct. Cl.), where the purchaser of corporate shares withheld part of the agreed price to cover possible liabilities. After paying taxes and interest it paid over the balance of the sums withheld. In a later year it received a refund of taxes previously paid, of which a portion was remitted to the retired stockholders, as representing part of the amount deducted from the original purchase price. The court held the total amount of the refund includible in the taxpayer’s gross income, but deductible upon being paid over, saying at p. 900: The transaction did not create a trust or agency fund * * * in which the retiring stockholders had a property interest. If the corporation had become bankrupt, the former stockholders could not have claimed any part of this amount in preference to other creditors. It was a debt, contingent as to amount, and nothing more. * * * ******* the plaintiff * * * owned the claim for refund and the interest paid on that claim. Its payment pursuant to its agreement to the former stockholders * * * did not affect the fact that it had received it as owner. Having so received it, the plaintiff was, prima facie, obligated to return it as income. * * * In the case at bar, had petitioner, after receipt of his salary, become bankrupt, there is nothing to indicate, and petitioner does not argue, that Gainsborough could claim any part of sums received from M. G. M. in preference to other creditors. The obligation to pay over a part of his salary to Gainsborough does not affect the fact that he received it from M. G. M. as owner. Moreover, the M. G. M. Agreement was concluded on March 16, 1948, and it was not until August 12, 1948, when the Agency Agreement was signed, that it became definite as to what, if anything, Gainsborough should receive as a result of petitioner’s employment by M. G. M. Until that date petitioner was under, at most, a contingent, unliquidated liability for breach of contract. Amounts received by petitioner prior to the signing of the Agency Agreement were clearly received by him under a claim of right and without any restriction ón his use or enjoyment thereof. That he later chose to assume a specific liability to pay a part of such sum to satisfy his obligation under the Box Agreement can no more prevent it from constituting gross income to him than if he had spent it for any other purpose. Sums received subsequent to the signing of the Agency Agreement are similarly gross income to petitioner. However matters may have stood between him and Gainsborough, he was the only party to the contracts and he alone performed the services by which the amount in question was earned. Lucas v. Earl, supra. Any restriction[1] on such amount in his hands arose only after unconditional payment to him by M. G. M., and neither affects the claim of right under which he received his salary, nor removes from him the burden of taxation thereon. Cf. Gray Processes Corporation, 43 B. T. A. 624, affirmed per curiam, 122 F. 2d 1021 (C. A. 3); Saenger v. Commissioner, 69 F. 2d 631 (C. A. 5). In the latter case, the court said at p. 632: The rule of the Earl Case, while made graphic by a figure, is more than a figure of speech. It is an expression of the simple truth that earned incomes are taxed to and must be paid by those who earn them, * * * not to those to whom their earners * * * are under eontra'ot to pay them. [Italics supplied.] We hold that the compensation which petitioner received for his services to M. G. M. is to be treated in full as his own. To the extent that he might have paid over part of it to Gainsborough in fulfillment of a contractual obligation he probably would have been entitled to a corresponding deduction. However, he never did pay any part of it to Gainsborough, during the tax year or at any other time. We can find no escape from the conclusion that the compensation earned by petitioner, paid to him, and retained by him must be included in his gross income, undiminished by any contractual liability running to Gainsborough. Decision will be entered for the respondent. As Indicated above, we think that the compensation was not subject to any restriction in petitioner’s hands. There was neither a trust nor an agency. Petitioner was in substance under a simple contractual obligation to pay a sum of money, computed in a specified manner, to Gainsborough. The compensation received by him from M. G. M. was subject to his unfettered control.