T.C. Memo. 2013-153

UNITED STATES TAX COURT

CEDAR VALLEY BIRD CO., LLP, SIX-D LLP, TAX MATTERS PARTNER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CEDAR VALLEY BIRD CO., SIX-D LLP, TAX MATTERS PARTNER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 26788-06, 29379-07.          Filed June 19, 2013.

Allen R. Davison II, pro se.

Douglas S. Polsky, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  These consolidated cases are partnership-level proceedings

subject to the unified audit and litigation procedures of the Tax Equity and Fiscal

[*2] Responsibility Act of 1982, Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648.

In two separate notices of final partnership administrative adjustment (FPAA) respondent adjusted the partnership items of Cedar Valley Bird Co., LLP (Cedar Valley), for tax years 2002, 2003, and 2004, by, inter alia: (1) adjusting gross receipts; (2) disallowing deductions for consulting fees, contract expenses, and cost of goods sold; and (3) recharacterizing Cedar Valley's income accordingly.[1] These adjustments stem largely from Cedar Valley's failure to properly substantiate the income and expenses reported on its partnership returns for the years at issue as required by section 6001.[2] Thus, after concessions,[3] the primary issue for decision is whether Cedar Valley properly reported its income and expenses for 2002, 2003, and 2004.[4]

---

[1]Respondent's adjustments included computational adjustments that are not directly in dispute.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Petitioner concedes respondent's disallowance of a deduction of $18,260 for consulting expenses reported in 2002.

[4]On brief petitioner also argued that Cedar Valley is a separate tax entity with business purpose and economic substance that properly elected the accrual method of accounting. Respondent, however, has not challenged Cedar Valley's tax status or its method of accounting, and they are therefore not at issue.

- 3 -

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Cedar Valley is an Iowa limited liability partnership, and at the time the petition was filed, Cedar Valley's principal place of business was in Iowa. Six-D, LLP (Six-D), a Kansas partnership, is Cedar Valley's tax matters partner and the petitioner in these cases.

Allen R. Davison II, a certified public accountant and tax attorney, created Cedar Valley in 2002 and was a partner in Cedar Valley with Six-D. According to Cedar Valley's Form 1065, U.S. Return of Partnership Income, Cedar Valley started business on April 1, 2002. Davison filed Cedar Valley's organizational document, a statement of qualification for a limited liability partnership, with the Iowa secretary of state on May 17, 2002.

Six-D is a general partnership organized in Kansas, but no filing was made with the Kansas secretary of state or with any other secretary of state of any other State in the United States to elect limited liability. During the years at issue Six-D had the following partners: (1) Davison and his wife, as cotrustees of the Sharon L. Davison Living Trust, owned a 95% interest in Six-D; (2) Davison in his individual capacity owned a 1% interest in Six-D; and (3) Davison and his wife's four children each owned a 1% interest in Six-D. Even though Davison's children

**[\*4]** had ownership interests in Six-D, Davison and his wife reported 100% of Six-D's flowthrough amounts on their personal return.[5]

During the years at issue Davison, in his individual capacity, also had an ownership interest in Fremont Farms of Iowa (Fremont Farms) and Cedar Valley Egg Farm (CV Egg Farm), which are egg production companies. Davison was a 10% owner and manager of CV Egg Farm and a 2.5% owner of Fremont Farms. When the egg production companies needed money to finance their operations, Davison created a financing arrangement between his clients and the companies. Pursuant to this arrangement, Davison's clients would lend money to the egg production companies in exchange for repayment of their loans plus a guaranteed rate of return.[6]

---

[5]Davison, in his capacity as an attorney for petitioner, filed petitions with the Court and originally represented petitioner as its legal counsel. However, in order to avoid certain conflicts of interest, Davison filed a motion to withdraw as attorney of record on June 11, 2012, and filed a supplement to his motion on June 13, 2012. Before trial the Court granted Davison's motion to withdraw as attorney of record, as supplemented. At trial Davison represented petitioner in his capacity as the cotrustee of his wife's trust, the tax matters partner of Six-D, and in his capacity as a 1% owner of Six-D.

[6]Davison advised his clients to claim that they were farmers purchasing layer hens and, as such, they could deduct the full amount of their loans plus farming-related deductions. Davison relied on Rev. Rul. 60-191, 1960-1 C.B. 78, which provides "that farmers employing the cash method of accounting may deduct the cost of baby chicks and egg-laying hens in the year of payment

(continued...)

**[\*5]** Davison, in his legal capacity as an attorney for his clients, see United States v. Davison, No. 08-0120-CV-W-GAF (W.D. Mo. Apr. 7, 2011) (order granting preliminary injunction), drafted the contracts (flock contracts) between his clients and the egg production companies, and Cedar Valley served as a third-party broker. Cedar Valley was not a party to the flock contracts or to any broker or loan guaranty agreement with Davison's clients or the egg production companies. In some cases, however, Cedar Valley entered into an assignment and purchase agreement with Davison's clients purchasing their rights in the flock contracts. At trial Davison testified that Cedar Valley did not claim any ownership interest in the layer hens or in any related flowthrough income and expenses.

Cedar Valley received a 3% commission for arranging the flock loan transactions.[7] While some of Davison's clients lent money directly to the egg production companies, the egg production companies repaid the loans, plus

---

[6](...continued)
therefor, provided such method is consistently followed and clearly reflects income." The revenue ruling, however, applies only to farmers within the meaning of the Code, and Davison's clients, who were never involved in farming, did not meet this definition. See United States v. Davison, No. 08-0120-CV-W-GAF (W.D. Mo. Apr. 7, 2011) (order granting preliminary injunction).

[7]At trial Davison claimed that Cedar Valley transferred the commission to Six-D Enterprises, Inc. (Six-D Inc.), one of Davison's entities. Six-D Inc., however, did not have a bank account, and Davison could not otherwise substantiate his claim.

[*6] interest of about 6%, through Cedar Valley. The egg production companies repaid some of the loans before the hens' cycle of egg production ended or before the hens became "spent".[8]

On its partnership returns for the years at issue, Cedar Valley reported income and expenses related to its loan brokering activities using an accrual method of accounting. Cedar Valley reported the following amounts for 2002, 2003, and 2004:

| Year | Gross receipts | Cost of goods sold | Deductions | Ordinary income or (loss) |
|------|----------------|--------------------|-----------|---------------------------|
| 2002 | $2,206,364 | $2,199,868 | $18,260 | ($11,764) |
| 2003 | 2,761,575 | 2,223,540 | 821,140 | (283,105) |
| 2004 | 2,361,117 | 1,440,000 | 1,364,433 | (443,316) |

Cedar Valley's deductions included, inter alia: (1) for 2002, $18,260 of consulting fees; (2) for 2003, $820,740 of consulting fees; and (3) for 2004, $92,990 of consulting fees, $1,269,715 of contract expenses, and $1,728 of miscellaneous

---

[8]"Spent" is an industry term that means the end of a hen's egg production cycle. A hen's egg production cycle is significant for accounting method purposes. Farmers who sell eggs commercially generally keep their laying hens only one year after they start producing eggs. Thus, these hens are held for sale in addition to being held for the production of eggs. Rev. Rul. 60-191, supra, provides that farmers who use the cash method of accounting may deduct the cost of hens and baby chicks purchased for egg-laying or for raising and sale in the year of payment.

[*7] expenses. The consulting fees, which Davison later claimed were contract expenses, were purportedly paid to Davison in his legal capacity as an attorney for his clients.

During respondent's audit examination for Cedar Valley's 2002, 2003, and 2004 tax years, Davison provided respondent's revenue agent with a one-page handwritten summary for each year at issue to support Cedar Valley's reported income and expenses. Davison prepared the one-page summaries and listed total amounts for items such as Cedar Valley's income, gross receipts, dividend and interest income, flock contracts, cost of sales, and fees, without any additional details.

Davison did not provide the revenue agent with any additional books and records during audit. Consequently, the revenue agent issued various third-party summonses and determined that Cedar Valley maintained a working capital management account at Merrill Lynch. Through the summons process, the revenue agent obtained Cedar Valley's bank account statements. The revenue agent conducted a bank deposits analysis by which he examined all of the transactions, deposits, and disbursements occurring in the accounts for the years at issue. He identified Cedar Valley's interest income, loan fees, bank charges, and dividends. He also identified Cedar Valley's checks to CV Egg Farm, Freemont

[*8] Farms, and Iowa Quality Pullets and marked them as "purchases". The revenue agent could not, however, identify every transaction listed in Cedar Valley's account statements and marked the unidentified transactions as "Other/unknown".

In addition to Cedar Valley's bank account statements, the revenue agent obtained: (1) tax reporting statements issued to Cedar Valley for the years at issue reporting taxable dividend and interest income; (2) Forms 1099-MISC, Miscellaneous Income, issued to Cedar Valley from CV Egg Farm for 2002 and 2003; and (3) copies of flock contracts from some of Davison's clients.[9]

On October 4, 2006, respondent issued to petitioner an FPAA for tax year 2002, and on September 20, 2007, respondent issued to petitioner an FPAA for tax years 2003 and 2004. Respondent included a Form 870-PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, with each FPAA. The Forms 870-PT made the following adjustments to Cedar Valley's 2002, 2003, and 2004 returns:

---

[9]At trial the revenue agent testified that he contacted Davison's clients to obtain copies of their flock contracts. He could not obtain the other flock contracts from the bookkeeper of CV Egg Farm because Davison was the manager of CV Egg Farm and kept all of the copies of the flock contracts. Davison did not provide copies of the flock contracts during discovery or at trial.

| [*9] Year | Adjustments to gross receipts | Adjustments to cost of goods sold | Adjustments to expenses | Total adjustments to ordinary income |
|---|---|---|---|---|
| 2002 | -0- | -0- | $17,905 | $17,905 |
| 2003 | ($2,721,575) | $2,223,540 | 820,740 | 322,705 |
| 2004 | (2,338,117) | 1,440,000 | 1,363,973 | 465,856 |

The adjusted expenses included: (1) for 2002, $18,260 of consulting fees, less a deduction for $355 of bank charges; (2) for 2003, $820,740 of consulting fees; and (3) for 2004, $92,990 of consulting fees, $1,269,715 of contract expenses, and $1,268 of bank charges. The Forms 870-PT also adjusted Cedar Valley's portfolio income to include additional taxable interest of $16,833, $62,500, and $50,000, for 2002, 2003, and 2004, respectively. Additionally, on the Forms 870-PT, respondent determined that Cedar Valley's corrected income constituted net earnings from self-employment to petitioner that would flow through to petitioner's individual partners according to their distributive shares.

Respondent adjusted Cedar Valley's gross receipts using the revenue agent's bank deposits analysis of Cedar Valley's bank accounts. For 2003 and 2004 respondent adjusted Cedar Valley's gross receipts to include commission income of $40,000 and $23,000, respectively, and determined that Cedar Valley did not have cost of goods sold. Respondent did not adjust Cedar Valley's gross

[*10] receipts and cost of goods sold for 2002.[10] With respect to Cedar Valley's expenses, respondent disallowed all unsubstantiated expenses and determined that Cedar Valley did not incur the consulting and contract expenses claimed for the years at issue. Petitioner timely filed petitions with the Court seeking readjustment of Cedar Valley's partnership items.[11]

---

[10]Respondent has not explained why he did not adjust Cedar Valley's gross receipts and cost of goods sold for 2002. At trial the revenue agent testified that he did not find evidence of any sales income for the years at issue. He explained that Cedar Valley's bank deposits consisted of money lent by Davison's clients to CV Egg Farm and Freemont Farms. The revenue agent also testified that the only evidence of Cedar Valley's cost of goods is its checks issued to Iowa Quality Pullets for flock purchases in 2002. Even though Cedar Valley issued the checks, it was not clear that Cedar Valley was the actual purchaser. Nonetheless, it seems that the revenue agent attributed Cedar Valley's flock purchases and any related gross receipts to Cedar Valley's cost of goods sold and gross receipts for 2002, which respondent left unadjusted.

[11]After petitioner began its Court proceedings, in 2008 the U.S. Department of Justice filed a civil injunction action against Davison in the U.S. District Court for the Western District of Missouri. The civil injunction action sought to enjoin Davison from giving Federal tax advice and selling fraudulent tax shelters, including sham flock contract arrangements involving Cedar Valley. On May 11, 2010, the District Court filed an injunction against Davison, and on January 31, 2011, the Court of Appeals for the Eighth Circuit affirmed the injunction, with one exception not relevant to these cases. United States v. Davison, 407 Fed. Appx. 997 (8th Cir. 2011). The District Court issued an unpublished amended injunction on April 7, 2011. In reaching its decision, the District Court found, inter alia, that the flock contracts Cedar Valley used were sham contracts and, instead, Cedar Valley operated as a third-party broker for the loan transactions between Davison's clients and the egg production companies. United States v. Davison, No. 08-0120-CV-W-GAF (W.D. Mo. Apr. 7, 2011) (order granting preliminary

(continued...)

**[*11]** OPINION

I.  Burden of Proof

Generally, the Commissioner's adjustments in an FPAA are presumed correct, and the taxpayer bears the burden of proving that the adjustments are incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also Republic Plaza Props. P'ship v. Commissioner, 107 T.C. 94, 104 (1996) ("Petitioner bears the burden of proving respondent's determinations in the FPAA are erroneous."); Clovis I v. Commissioner, 88 T.C. 980, 982 (1987) (an FPAA is the functional equivalent of a notice of deficiency.).

In unreported income cases, however, the presumption of correctness that attaches to the Commissioner's determinations requires the Commissioner to establish some evidentiary foundation connecting the taxpayer with the income-producing activity, see Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-140, or demonstrating that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982).  With respect to Cedar Valley's unreported income adjustments for the years at issue, the parties agree that Cedar Valley

---

[11](...continued)
injunction).

[*12] received income from its involvement in the flock contracts. Their disagreement, however, pertains to Cedar Valley's role in the flock loan transactions and whether Cedar Valley's role as a third-party loan intermediary generated additional income and expenses that were not recorded in Cedar Valley's bank records.[12] Thus, respondent has demonstrated a link between Cedar Valley and the tax-producing income, and respondent is entitled to the usual presumption of correctness.

Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and satisfies the requirements of section 7491(a)(2). Section 7491(a)(2) requires a taxpayer to demonstrate that he (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). The burden is on the taxpayer to show that he satisfied these requirements. See Richardson v. Commissioner, T.C. Memo. 2005-143.

At trial Davison made an oral motion to shift the burden of proof to respondent. The issue in these cases is primarily whether Cedar Valley properly

[12]See infra pp. 15-16.

[*13] reported its income and expenses from its loan intermediary activities. Petitioner, however, failed to produce any credible evidence that Cedar Valley properly reported its income and expenses. In fact, petitioner did not maintain books and records that support Cedar Valley's reported income and expenses, and, when asked to provide supporting documents, petitioner did not cooperate. Therefore, petitioner did not comply with the substantiation requirements of section 7491(a)(2)(A), and it did not maintain all required records or cooperate with respondent's reasonable requests as required by section 7491(a)(2)(B).

The Court therefore determined that petitioner did not satisfy the requirements of section 7491 and, on June 13, 2012, entered a written order denying petitioner's oral motion to shift the burden of proof. In its briefs, petitioner again claims that the burden of proof has shifted to respondent. This claim is likewise denied for the reasons described above, and the burden of proof remains on petitioner.

## II. Adjustments of Partnership Items

### A. Gross Receipts and Income Adjustments

Respondent adjusted Cedar Valley's gross receipts for 2003 and 2004 to include commission income of $40,000 and $23,000, respectively. Respondent

**[\*14]** also determined that Cedar Valley had additional interest income for each of the years at issue.

Under section 6001, taxpayers must maintain sufficient books and records establishing the correct computation of their taxable income. If a taxpayer fails to maintain adequate books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. Sec. 446(b); see also Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of a taxpayer's income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The only records documenting Cedar Valley's reported income were a one-page handwritten document prepared by Davison for each year at issue, bank account statements, interest and dividend tax reporting statements, and Forms 1099-MISC. Respondent could not tie Cedar Valley's reported income to its bank account statements.[13] In addition, the one-page summaries, which Davison used to prepare Cedar Valley's returns, did not correspond to the income reflected in Cedar Valley's third-party records or provide any details regarding the sources and

---

[13] At trial the revenue agent testified that in his review of the deposits and checks issued from Cedar Valley's Merrill Lynch account he "could not reconcile anything to the gross receipts and cost of goods sold amounts reported on the returns."

**[*15]** amounts of Cedar Valley's income. Accordingly, Cedar Valley did not maintain sufficient books and records, and respondent was entitled to reconstruct Cedar Valley's taxable income using a reasonable method.

Respondent reconstructed Cedar Valley's taxable income using, inter alia, bank account statements and information provided by the bookkeeper for CV Egg Farm and Davison's clients. From these sources, respondent determined that Cedar Valley received two types of income: (1) additional interest income of $16,833, $62,500, and $50,474, in 2002, 2003, and 2004, respectively, from CV Egg Farm, and (2) commission income of $40,000 and $23,000, in 2003 and 2004, respectively, from loans made to CV Egg Farm and Fremont Farms.[14] Respondent adjusted Cedar Valley's gross receipts and portfolio income accordingly.

Except for the one-page summaries, petitioner did not offer any evidence to show that respondent's adjustments were incorrect. Rather, petitioner relies solely on Davison's testimony that Cedar Valley's taxable income was accurately recorded in the one-page summary he prepared for each year at issue.

---

[14]Although Davison claims that Cedar Valley eventually paid the 3% commission to Six-D Inc., there is no written agreement between Cedar Valley and Six-D Inc., and Six-D Inc. did not have a bank account or other records to corroborate Davison's claim. Indeed, according to Cedar Valley's bank records, Davison, and not Six-D Inc., probably received any commission income, which Cedar Valley transferred to, inter alia, Davison's country club, investment broker, and Merrill Lynch account.

**[*16]** At trial Davison testified that the one-page summaries differ from Cedar Valley's bank account statements and other records because not all of the flock loan transactions ran through Cedar Valley's bank account. According to Davison, the flock loan transactions did not show up on Cedar Valley's bank account statements and, instead, were recorded in his one-page summaries using the accrual method of accounting. Using the accrual method of accounting, Davison claimed that Cedar Valley generated income and incurred corresponding liabilities by guaranteeing to repay the flock loans.

Petitioner did not provide any evidence that Cedar Valley guaranteed the loans between Davison's clients and the egg production companies. Except for certain assignment and purchase agreements with some of Davison's clients, Cedar Valley was not a party to the flock contracts or to any other agreement with Davison's clients or the egg production companies. Furthermore, there were no written guaranties from Davison or Cedar Valley, nor was there any evidence of Cedar Valley's liability under a guaranty because of default by the egg production companies. Thus, Davison's testimony regarding Cedar Valley's purported guaranty of the flock loan transaction is self-serving and uncorroborated and is therefore insufficient to establish that Cedar Valley properly reported its taxable income and expenses for the years at issue. See, e.g., Tokarski v. Commissioner,

**[\*17]** 87 T.C. 74, 77 (1986) (holding that the Court is not required to accept a party's self-serving testimony that is uncorroborated by persuasive evidence).

Moreover, to the extent Cedar Valley included in its gross receipts the loan amounts that passed through Cedar Valley from Davison's clients to the egg production companies, the loans are not income to Cedar Valley. Generally, "a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit." Diamond v. Commissioner, 56 T.C. 530, 541 (1971), aff'd, 492 F.2d 286 (7th Cir. 1974). Thus, money a taxpayer receives in his or her capacity as a fiduciary or agent does not constitute income to that taxpayer. Herman v. Commissioner, 84 T.C. 120, 134-136 (1985).

At trial the revenue agent testified that the deposits in Cedar Valley's bank account "were money that was loaned from persons who were clients of Mr. Davison loaned to Cedar Valley Egg Farm and Freemont Farms of Iowa through the Cedar Valley Bird Company bank account." Cedar Valley took its commission from the loan amounts deposited in its account. According to Davison, Cedar Valley would collect the loan amounts in its bank account, and after deducting Cedar Valley's commission, would transfer the loan amounts to the egg production companies. Therefore, Cedar Valley did not have control over the loan

[*18] amounts deposited in its bank account, but rather was obligated to transfer the loan amounts to the egg production companies. Cf. Bennett v. Commissioner, 23 T.C. 1073, 1079 (1955). Thus, the loan amounts deposited in Cedar Valley's bank account did not constitute income to Cedar Valley except for any commission income allocated to Cedar Valley. Accordingly, respondent properly adjusted Cedar Valley's gross receipts for 2003 and 2004 to exclude loan amounts deposited in its bank account.

Petitioner did not address the interest and commission income adjustments. Accordingly, respondent properly adjusted Cedar Valley's gross receipts and increased its interest income in the amounts stated in the FPAAs.

B. Cost of Goods Sold and Business Expenses

Respondent determined that Cedar Valley did not have costs of goods sold for 2003 and 2004. Respondent also determined that Cedar Valley was not entitled to deduct consulting expenses for the years at issue and a contract expense and a bank charge for 2004. At trial Davison testified that petitioner conceded the consulting expense for 2002. Davison further testified that the consulting expenses for 2003 and 2004 should be contract expenses.

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred by a taxpayer in carrying on a trade or business. Deductions are a

[*19] matter of "legislative grace", and taxpayers bear the burden of proving that they are entitled to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must maintain sufficient records to establish the amounts of allowable deductions and to enable the Commissioner to determine the taxpayers' correct tax liabilities. See sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999); sec. 1.6001-1(a), Income Tax Regs.

As discussed above, Cedar Valley did not maintain sufficient records to substantiate its taxable income and expenses for the years at issue. Instead, petitioner relies on Davison's testimony that Cedar Valley's liabilities were accurately recorded in the one-page summary he prepared for each year at issue. According to Davison, Cedar Valley incurred its liabilities primarily by guaranteeing to repay the flock loans under the accrual method of accounting and such liabilities would not otherwise appear in a bank deposits analysis.[15]

The one-page summaries, however, do not tie into Cedar Valley's other records, and Davison's self-serving testimony is insufficient to establish Cedar Valley's deductible expenses. Similarly, Davison's testimony regarding Cedar

---

[15]Davison did not specify whether Cedar Valley reported its liabilities from loan guaranties as a cost of goods sold or contract expenses.

[*20] Valley's loan guaranties, without further corroboration, is insufficient to support any liabilities Cedar Valley allegedly incurred under the accrual method of accounting. Cedar Valley was not a party to the flock contracts or to any other contract with Davison's clients or the egg production companies. Furthermore, petitioner did not provide any written guaranties from Davison or Cedar Valley or any evidence of Cedar Valley's liability under a guaranty because of default by the egg production companies. Any commitment by Cedar Valley to guarantee repayment of the loans plus a rate of return was oral and supported only by Davison's testimony. Accordingly, since Cedar Valley had no legal obligation to make any payment on the flock loans, there was no basis for an expense deduction. See Wilson v. Commissioner, 40 T.C. 543, 551 (1963).

Accordingly, respondent properly adjusted Cedar Valley's cost of goods sold and business expense deductions, and petitioner did not provide any reliable evidence to show that these adjustments were incorrect.

**[\*21]** The Court has considered the parties' arguments and, to the extent not addressed herein, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.